# THE VILLAGE OF WARREN
## v.
## JOHN W. WRIGHT.

1. MUNICIPAL OFFICERS—DUTY AS TO SIDEWALKS.—Trustees of villages are bound to exercise ordinary care and diligence to keep the sidewalks in the village safe, and if in the exercise of this duty they bestow ordinary care and diligence, no liability arises, though the sidewalk may not be reasonably safe.

2. PRACTICE—INSTRUCTIONS MUST STATE THE LAW CORRECTLY.—In cases where there may be doubt whether substantial justice has been done, each instruction of appellee or defendant in error must state the law correctly, or there should be a reversal.

3. NOTICE OF DEFECTS—WHERE SIDEWALK NOT CONSTRUCTED BY CITY. —Where the sidewalk is constructed by the property owner, and not by the city, notice to the city of its condition is requisite to charge the city with liability.

4. INSTRUCTION ASSUMING FACT PROVED.—An instruction which assumes that the defendant neglected to exercise ordinary care and diligence, when the fact of such neglect was contested, is erroneous.

Semble—That it is improper to inform the jury in each instruction that the plaintiff claimed a certain amount, and to caution them as many times that they should be careful to allow no more.

ERROR to the Circuit Court of Jo Daviess county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed May 2, 1879.

Mr. J. W. LUKE, for plaintiff in error; that the allegations

and proof must correspond, cited Moss v. Johnson, 22 Ill. 633; Ill. Cent. R. R. Co. v. McKee, 43 Ill 19; City of Bloomington v. Goodrich, 10 Chicago Legal News, 353.

A city is only bound to see that its sidewalks are reasonably safe: City of Chicago v. McGiven, 78 Ill. 347; City of Rockford v. Hildebrand, 61 Ill. 155; City of Quincy v. Barker, 81 Ill. 300.

Cities are liable only where the authorities know or by reasonable diligence may ascertain, that the sidewalks are out of repair, and when sufficient time has elapsed after notice, to make the necessary repairs: City of Peru. v. French, 55 Ill. 317; City of Chicago v. Scholten, 75 Ill. 468; City of Chicago McCarthy, 75 Ill. 602.

Where the city did not construct the sidewalk, notice of its defect is requisite to create a liability: City of Rockford v. Hildebrand, 61 Ill. 155.

The mere non-feasance of a city in respect of such repairs, cannot be charged as willful neglect, so as to raise a liability for more than compensatory damages: City of Decatur v. Fisher, 53 Ill. 407; City of Chicago v. Langlass, 52 Ill. 256.

A judgment will be reversed when there is no evidence to sustain a verdict, or when it is manifestly against the weight of evidence: Reynolds v. Lambert, 69 Ill. 495; C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; Smith v. Slocum, 62 Ill. 354; City of Rock Island v. Vanlandschoot, 78 Ill. 485; City of Chicago v. McCarthy, 75 Ill. 602.

Instructions should be consistent, and present the law of the case accurately: C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499; C. & A. R. R. Co. v. Murray, 62 Ill. 326; Baldwin v. Killian, 63 Ill. 550; Ill. Cent. R. R. Co. v. Maffit, 67 Ill. 431; C. & A. R. R. Co. v. Mock, 72 Ill. 141.

Messrs. D. & T. J. Sheean, for defendant in error; upon the question of the duty of a city to keep its sidewalks in repair and liability for neglect, cited City of Bloomington v. Bay, 42 Ill. 503; City of Joliet v. Verley, 35 Ill. 58; 42 Ill. 507; Schmidt v. N. & W. R. R. Co. 83 Ill. 405.

As to notice of defect: City of Rockford v. Hildebrand, 61

Ill. 155; City of Springfield v. Doyle, 76 Ill. 202; Alexander v. Mt. Sterling, 71 Ill. 366.

As to setting aside a verdict where the evidence is conflicting, but not palpably against the weight of evidence: Carrigan v. Hardy 46 Ill. 502; Sherman v. C. &. M. R. R. Co. 48 Ill. 523; Belden v. Innis, 84 Ill. 78; C. & N. W. R. R. Co. v. Dement, 44 Ill. 74; Baker v. Robinson, 49 Ill. 299; Ehrich v. White, 74 Ill. 481; Melburn v. Schurin, 49 Ill. 69; Jacquin v. Davidson, 49 Ill. 82; Powell v. Feeley, 49 Ill. 143; Lalor v. Scanlan, 49 Ill. 152; C. F. R. & B. Co. v. Jameson, 48 Ill. 281; Bunker v. Green, 48 Ill. 243; C. & R. I. R. R. Co. v. Hutchins, 34 Ill. 108; C. & G. E. R'y Co. v. Vosburg, 45 Ill. 311; Allan v. Payne, 45 Ill. 339; Cadwell v. Sherman, 45 Ill. 348; Bruce v. Am. Ex. Co. 50 Ill. 201; Kuhnen v. Blitz, 56 Ill. 171; Chicago City R'y Co. v. Young, 62 Ill. 238; Bourne v. Stout, 62 Ill. 261; C. R. I. & P. R. R. Co. v. Reidy, 66 Ill. 43; DeClurg v. Mungin, 46 Ill. 112; Chapman v. Stewart, 63 Ill. 332; O'Reiley v. Fitzgerald, 40 Ill. 310; McCarthy v. Mooney, 49 Ill. 247; Young v. Bush, 48 Ill. 42; Neustadt v. Hall, 58 Ill. 172; Presb. Ch. v. Emerson, 66 Ill. 269; Chicago v. Garrison, 52 Ill. 516; Plummer v. Rigdon, 78 Ill. 222; Miller v. Balthasser, 78 Ill. 302; Wallace v. Wren, 32 Ill. 146; C. & A. R. R. Co. v. Shannon, 43 Ill. 338; O'Brien v. Palmer, 49 Ill. 72.

The verdict will not be disturbed even when against the weight of evidence, and such weight does not depend upon the number of witnesses: C. & R. I. R. R. Co. v. McKean, 40 Ill. 218; Ill. Cent. R. R. Co. v. Gillis, 68 Ill. 317; Bishop v. Busse, 69 Ill. 403.

It is for the jury to give credit to such witnesses as they may believe: Crain v. Wright, 46 Ill. 107; Wood v. Hildreth, 73 Ill. 525; Holcomb v. Tuttle, 79 Ill. 409; Foos v. Sabin, 84 Ill. 565; Dunning v. Fitch, 66 Ill. 51; Robinson v. Parish, 62 Ill. 130; Bishop v. Busse, 69 Ill. 403; Wiggins Ferry Co. v. Higgins, 72 Ill. 517.

If substantal justice has been done the verdict will not be set aside: Smith v. Schultz, 1 Scam. 490; Gillett v. Sweat, 1 Gilm. 475; Greenup v. Stoker, 3 Gilm. 202; Underhill v. Fake, 46 Ill. 50; Hall v. Lincoln, 46 Ill. 52.

Where the evidence is so conflicting as to leave the question of right uncertain, the verdict will not be disturbed: Evans v. Fisher, 5 Gilm. 569; Pullian v. Ogle, 27 Ill. 189; St. Louis R. R. Co. v. Gilham, 39 Ill. 455; Stevens v. Brown, 58 Ill. 289; Chapman v. Burt, 77 Ill. 337.

Even though the Appellate Court would be better satisfied if the verdict had been the other way: Bloom v. Crane, 24 Ill. 48; Scarritt v. Carruthers, 29 Ill. 487; Voltz v. Stephani, 46 Ill. 54; Varner v. Varner, 69 Ill. 445.

Upon the question of damages: Ill. Cent. R. R. Co. v. Simmons, 38 Ill. 242; Chicago v. Fowler, 60 322; Chicago v. Langlass, 66 Ill. 361; City of Galesburg v. Higley, 61 Ill. 287; N. L. Packet Co. v. Bininger, 70 Ill. 571; Ill. Cent. R. R. Co. v. Ebert, 74 Ill. 399; Peoria Bridge Co. v. Loomis, 20 Ill. 236; Frink v. Schroyer, 18 Ill. 416; Chicago v. Jones, 66 Ill. 349; Moore. v. A. & S. R. R. Co. 10 Barb. 623; P. C. & St. L. R. R. Co. v. Thompson, 56 Ill. 138.

That erroneous instructions will not always be ground for a reversal: Howard F. &. M. Ins. Co. v. Cornick, 24 Ill. 455; Hardy v. Keeler, 56 Ill. 152; Curtis v. Sage, 35 Ill. 22; Watson v. Wolverton, 41 Ill. 241; Ill. Cent. R. R. Co. v. Swearingen, 47 Ill. 206; Chicago v. Hesing, 83 Ill. 204; Hazen v. Pierson, 83 Ill. 241; Foster v. C. & A. R. R. Co. 84 Ill. 164; McConnell v. Kibbe, 33 Ill. 177; Thompson v. Force, 65 Ill. 370; Hewitt v. Jones, 72 Ill. 218; Dishon v. Schorr, 19 Ill. 59; Elam v. Badger, 23 Ill. 498; N. E. F. & M. Ins. Co. v. Wetmore, 32 Ill. 223; Hall v. Groufe, 52 Ill. 421; Ryan v. Donnelly, 71 Ill. 101; Pierce v. Hasbrook, 49 Ill. 25; Town of Vinegar Hill v. Busson, 42 Ill. 45; Gilchrist v. Gilchrist, 76 Ill. 281; Warren v. Dickson, 27 Ill. 115; Morgan v. Peet, 32 Ill. 281; Stowell v. Beagle, 79 Ill. 526: Van Buskirk v. Day, 32 Ill. 206; Latham v. Roach, 72 Ill. 179; Murphy v. The People, 37 Ill. 448; Walker v. Collier, 37 Ill. 362.

Erroneous instructions will not reverse if they appear to work no injury to the party complaining: Andes Ins. Co. v. Fish, 71 Ill. 620; P. A. & D. R. R. Co. v. Sawyer, 71 Ill. 361; Rankin v. Taylor, 49 Ill. 451; Coursen v. Ely, 32 Ill. 338; City of Alton v. Hope, 68 Ill. 167; Wiggins Ferry Co. v. Higgins, 72 Ill. 517;

Sterling Bridge Co. v. Baker, 75 Ill. 139; Rice v. Brown, 77 Ill. 549; Reynolds v. Greenebaum, 80 Ill. 416.

Giving or refusing instructions containing mere abstract propositions of law, is not error: Ryan v. Donnelly, 71 Ill. 100; Tuttle v. Robinson, 78 Ill. 332; Ill. Cent. R. R. Co. v. Swearingen, 47 Ill. 206.

LELAND, J.  This was an action on the case by appellee, against appellant, to recover damages for an injury caused by the fall of a sidewalk, through the alleged negligence of the latter.

On the south side of Main street, there was a sidewalk built in 1858 or 1859, by the then lot owner.  The portion of the walk which fell was in front of two buildings, and of the space of about eight feet between them, the easternmost called Brand's and the other Brink's.  There was a depression in the surface of the earth, by reason of which the portion of the sidewalk which fell was about seven feet above the ground. The depression had been filled in the street nearly up to the girders upon which the stringers rested.  There was a stone wall parallel to and seven feet distant from the front walls of the buildings.  The girders were five feet apart, and about two inches higher at the south ends than at the north, with their north ends resting on the top of the street wall, and their south ends inserted in holes in the walls of the buildings, except that the one girder which was in the space between the buildings, rested upon the top of a post.  On the girders and at right angles with them, were four or five, probably four, 2x6 stringers to which the boards were nailed.  The stringers were probably not nailed to the girders.  Whether the post upon which the girder rested, was set upon a stone, stood upon the surface of the earth or was driven into it, does not appear. Nor does it appear whether the girder was nailed to it, nor whether the post was in any way braced or stayed.  The end of the girder resting on the post, and of the one five feet east from it, which was in a hole near the west side of the Brand building, on May 11th, 1877, fell simultaneously, or possibly one of the supports may have given way wholly or partially

before the other did, leaving the fallen portion of the sidewalk about fifteen feet in length at an angle of forty-five degrees, with the south side or side nearest the buildings on the ground and the north side on or against the street wall.

There were four persons on it when it fell; three of them near the building, and one, appellee, near the street wall. Those near the building were unhurt. Appellee plunged forward, or slid down the inclined plane, and fell between the two buildings, and was hurt, mainly in the small of the back. It is not easy to determine from the evidence how serious the injury was, or that it was really a serious one at all. One jury thought appellee was injured to the extent of $2,000, and the last one fixed the amount at $3,000. Sympathy, however, is often so strong in such cases that it is difficult to restrain the impulse to be liberally charitable, when the fund to bestowed is another's. There was a flight of stairs on each side of the space between the buildings, leading up to the second story. The stairs nearly filled the space, and rested on the sidewalk. The stairs of the Brink building had settled at the side farthest from the building, so that the steps were not horizontal, but were lowest at the outer ends. The sidewalk had settled or sagged down between the buildings some few inches, probably about four or five. As there is no other way to account for this, except by the settling of the top of the post or point of support under the girder, we may assume that this was done. It is no matter how it was done. The top of the post was in some way lowered, and the superstructure went down also; the girder by its own weight, if not attached to the stringers, and the latter were sprung or bent down. A mechanic was employed in November, 1874, to repair the Brink stairs, and in order to bring the steps up to the horizontal, instead of putting a post under the end of the girder in place of or near the other, he put a six-inch post, as he says, about five feet from the Brand building and four feet from the Brink build-ing, and placed it under the stringer. This new post of the stair repairer must have been near to the old post of the side-walk constructor. When he had the sidewalk and steps raised up so as to be horizontal, or nearly so, with his post under the

stringer, the place of support was, of course, transferred from the old post to the new one, unless he had left a wedge, used in raising between the top of the old post and the girder or between the girder and the stringer or all the stringers. And so it would be if the wedge placed there got out.

The mechanic was repairing stairs, not a sidewalk; and it is quite probable that when he got through with his work, there was no very good reason why the girder should remain on the top of the post, or why the post with the girder on it should not go down. The stringer on the new post was not the only one raised. All the others between it and the street wall must have gone up too, some more and some less; and so it might have been with the other girder which fell. The superincumbent weight might have been taken wholly or in part off both girders, leaving them in a condition to be easily moved. It may also be that by not raising the stringer on the new post perpendicularly, but by pressing it street-ward, while the stringers and girder at the Brand corner were still in contact, the latter may have been drawn wholly or partly out of the hole in the wall. And to this result the tapping of the stringers as they rose and fell, might have contributed. If such were the circumstances, it is probable that the walk did shake and teeter some before it fell. The exact time when and manner in which these two girders went down, might be material in enabling us to determine whether the original construction was with ordinary care and diligence, or whether, if the original construction was well enough, and the whole trouble came from setting that new post under the stringer instead of the girder, ordinary care was used by the trustees to ascertain what the matter was, and to apply the remedy. It might be said that it was asking a little too much of the trustees to require them to have done so, when the attorneys and witnesses do not explain how the thing was done. We can imagine now how the sidewalk could have been made safer when originally constructed, or if the trouble came from repairing the stairs, which seems probable how it might have been avoided; but it is often easier to ascertain after the effect is produced, what the cause was, than to discover what m· y be the future effect of an existing cause.

The case at bar is not so clear for the appellee, taking into account the doubt as to the extent of his injury, the magnitude of the verdict, and the question whether appellant has not really exercised ordinary care and diligence, that we can say that there has been that substantial justice done which renders inaccuracy of ruling by the court below unimportant in an appellate tribunal.

The only question, therefore, about which we propose to express an opinion, is that as to the instructions.

Without considering what would be the effect if the bill of exceptions did show that the five instructions given for appellee were not all that were given for him as claimed by appellee, we think it does substantially appear that he asked for no others. The conclusion that there might have been others between those asked for by appellee, and those asked for by appellant, is, we think, fairly excluded by the language of the bill of exceptions.

It is not necessary to investigate whether the appellee exercised proper care. He has been injured without fault on his part. Nor to say anything further as to the extent of his injury, except to say that there is always in such cases a strong bias on the part of a plaintiff, tending to cause exaggeration, which is to be guarded against. Two out of the three physicians examined in this case stated that they thought appellee was trying to exaggerate and magnify the extent of his injury. A man would, indeed, be something more than human, if his conduct would be precisely the same when examined by a surgeon, who expected to be a witness in such a case as this, as it would be if the examination were for the purpose of obtaining life insurance; and the surgeon's evidence is too often composed largely of impressions or conclusions produced by the declarations and conduct of the patient. In this case, the existence of the injury could not be discovered without such declarations and conduct of the plaintiff, except so far as his general appearance might indicate such an injury as that claimed by him.

The rule of law, as to such officers as the trustees, is well stated by Justice Sheldon in these words: "They are bound to

exercise ordinary care and diligence to keep them (sidewalks) reasonably safe." Rockford v. Hildebrand, 61 Ill., 157. The omission of the word "reasonably" might, perhaps, have improved the statement. The duty is to keep them safe. In the attempted discharge of the duty, ordinary care and diligence only are necessary, and if such be bestowed, there is no liability, though the sidewalks may not be reasonably safe, The adverb reasonably, whatever it may originally have meant. as now used, qualifies the condition of things as well as the conduct of persons. One of its definitions is, " in a moderate degree, not fully, moderately, tolerably" (Webster). The statement that a horse was reasonably or moderately safe, or a reasonably or tolerably good one, would be allowable.

In some cases it has been held that if it appear that substantial justice has been done, courts should not reverse, if the instructions on both sides, taken as a whole, average about right. In cases where there may be doubt whether substantial justice has been done, each instruction of appellee or defendant in error must state the law correctly, or there should be a reversal. In a case where the sympathy of the jury was on one side there would be danger that they would not stop to average, but, that out of the given instructions on both sides, they would select those in accordance with their sympathy and not attach as much weight to the others as they were legally entitled to. In a case like this, we are disposed to consider as good authority Chicago & Alton R. R. Co. v. Murray, 62 Ill. 326; Baldwin v. Killian, 63 Ill. 550; Ill. Cent. R. R. Co. v. Maffit, 67 Ill. 431; C. B. & Q. R. R. Co. v. Payne, 49 Ill. 449, and other cases to the effect that each instruction must be right.

The fifth instruction for appellee concludes with the statement that "It makes no difference for the purposes of this suit whether said sidewalk was constructed by the defendant or a private property holder, and the jury may consider said sidewalk the same as though it was constructed by the defendant." It is not entirely clear whether this sidewalk was built prior or subsequent to the passage on Feb. 24, 1859, of the special charter of the village; probably, however, after. The evidence

is that is was built in 1858 or 1859. Conceding that it was the duty of the trustees to oversee and supervise the construction, as the property owner had the right to build, there might be a difference between actually building and overseeing as to what defects would indicate want of ordinary care and diligence. And in Rockford v. Hildebrand, *supra*, it is expressly said that "As the city did not construct the sidewalk, notice of its condition was requisite to charge the city with liability." There is certainly some difference between a case where the village constructed the sidewalk and one where it did not, and it was error to say there was none whatever. The main difficulty, however, is about the other four instructions, which are as follows, viz:

1. "The jury are instructed by the Court that the defendant under its special charter and also under its organization, under the general law, had the power to construct and maintain sidewalks along its streets, and also it was its duty to see that such sidewalks were constructed in a reasonably safe manner for public use, and when so constructed to keep them in repair so as to be reasonably safe for the public. And if the jury believe from the evidence that the plaintiff, while exercising due care on his part, received injury in consequence of the neglect of duty aforesaid by said defendant, either in the construction of the sidewalk in controversy or keeping it so in repair, then the jury should find their verdict against the defendant and assess the plaintiff's damages at such sum as the evidence in the case may warrant, not exceeding, however, the sum of ten thousand dollars, claimed in the declaration."

2. "The jury are instructed by the court that if they believe from the evidence, that the sidewalk in question in this suit was out of repair at the time of the alleged injury, and had so remained for an unreasonable length of time before the time of the alleged injury to the plaintiff, then no actual notice to the defendant was necessary, but the law will presume notice to the defendant in such case. And if the jury believe, from the evidence, that the plaintiff while he was upon the sidewalk aforesaid, using due care on his part, was thrown down with said sidewalk a distance of six or seven feet, and against a

wall, and was thereby injured in consequence of the said sidewalk being so out of repair, then the jury should find their verdict for the plaintiff, and assess his damages at whatever sum the evidence in the case justifies, not exceeding, however, the sum of ten thousand dollars claimed in the declaration.".

3. "The jury are instructed by the court that where a sidewalk is constructed in an improper and negligent manner, no notice of its condition is necessary to make the village liable for the injury, as it is the duty of the village to take notice of the condition of its own sidewalks when they are so defectively and improperly constructed. And if the jury believe from the evidence that the sidewalk in question was constructed in a negligent and improper manner, and that while the plaintiff was passing over or standing upon said sidewalk, using due care, said sidewalk gave way, fell, thereby throwing the plaintiff violently to the ground and against a stone wall and greatly injuring him, then the jury should find the. defendant guilty and assess the plaintiff's damages at whatever the evidence in the case warrants, not exceeding however the amount claimed in the declaration, and in assessing the plaintiff's damages, the jury may take into consideration, the plaintiff's loss of time, expenses incurred in being cured, pain and suffering undergone, and any permanent injury to the person as proper elements of damages, so far as the same may have been established by the evidence."

4. "The jury are instructed by the court that if they believe from the evidence that the injury alleged to have been sustained by the plaintiff in consequence of the defective construction of the sidewalk of the defendant, was the combined result of an accident and of a defect in the construction of the sidewalk, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident, yet if the jury believe, from the evidence, that there was no fault or negligence on the part of the plaintiff, and the accident was one which common prudence and sagacity on his part could not ha.e been foreseen and provided against, the jury should find the defendant guilty, and assess the plaintiff's damages at whatever the evidence warrants, not exceeding, however, the amount claimed in the declaration."

The statement in the first instruction, that it was the duty of the village to see that the sidewalk was constructed in a reasonably safe manner, and that when so constructed it was to be kept in repair so as to be reasonably safe without the insertion after the word "duty," and before the words "to" of the words "to exercise ordinary care and diligence," was well calculated to mislead the jury for reasons before stated. This, however, is not the only difficulty. After stating that such was the duty, it is said that if the jury believe, from the evidence, that the plaintiff, while exercising due care on his part received injury in consequence of the neglect of the duty aforesaid by said defendant, the verdict should be for plaintiff.

Here are two assumptions; one that plaintiff was careful, and the other that defendant had neglected its duty. The first is unimportant because there was no conflict in the evidence, the other very important because there was a serious conflict, as to whether ordinary care and diligence had not really been exercised. It was a very easy matter to have avoided misconstruction by the jury by saying simply that it was the duty of the village to exercise ordinary care and diligence in constructing sidewalks, and in repairing them when constructed.

The second instruction is still more imperfect. It is to the effect that if the sidewalk were out of repair for an unreasonable length of time and if the plaintiff were thereby injured the village was liable, no matter what the measure of its care and diligence may have been to discover and remedy the difficulty, nor is it made material to what extent it was out of repair. The law is well settled that it is not the absolute duty of municipalities to discover and remedy defects in sidewalks, but only to use ordinary care and diligence to do so. Town of Grayville v. Whittaker, 85 Ill. 439, and other previous cases. The facts in this instruction may exist and yet there may have been ordinary care and diligence. After lapse of reasonable time, notice of the defect may be implied, and yet the defect be one which ordinary care and diligence would not require to be repaired. There are no perfect sidewalks. It is with them as with men. There are none without some defects.

The third instruction creates liability, if the sidewalk were

negligently and improperly constructed by the lot owner, though there was no notice to the village authorities; and what has been said about the fifth is applicable to this one. Nor is mere neglect, however slight, enough to make liability. Unless it amount to a want of ordinary care and diligence, it is not neglect enough.

In the fourth instruction the jury are told that if the injury, alleged to have been sustained in consequence of the defective construction of the sidewalk, was the combined result of an accident and a defect of construction, and there would have been no damage but for the defect, then the defendant was guilty, and the jury should so find. That is, if there were a defect of construction, and if appellee were injured, there would be liability without even the slightest negligence on the part of the appellant. That this is incorrect, see Shearman and Redfield on Negligence, § 147. What this supposed combination of accident and defect means, under the evidence in this case, is difficult to understand. The jury could never have known exactly what the idea intended to be conveyed was. They may have construed it to mean that the plaintiff, having met with an accident on the defective village sidewalk, ought to have some relief and that the village treasury was the most appropriate place for it to come from. If the idea intended, as is probable, was that if the fall of the sidewalk was partly owing to accident and partly to the negligence of the defendant, the jury should find for the plaintiff, then it was wrong. The admixture of accident might have been enough to dilute the negligence below the standard of ordinary care and diligence.

It was improper also to inform the jury four different times that the plaintiff claimed ten thousand dollars, and to caution them as many times that they should be careful to allow no more. Though not perhaps alone enough for a reversal, the jury may well have supposed there was some urgent necessity for restraining them, so they should not give more. And they might also conclude that plaintiff would never have put in so large a claim unless his injury was quite serious. See C. R. I. & P. R. R. Co. v. Austin, 69 Ill. 426.

For the reasons mentioned we think there should be another trial. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.